FRED A. RISSER, Chairperson Senate Organization Committee
On behalf of the Senate Organization Committee you have asked what constitutes a violation of section 16.49, Stats., what the penalties are for violating that statute and who is charged with enforcing the statute. Section 16.49 provides:
 No department or any officer or employe thereof shall present any request for increased appropriations or any explanation, argument or appeal in support of any such request, except at a hearing of the governor or the joint committee on finance or at the request of either house or any committee thereof. Nor shall any department, officer or employe attempt to procure an increased appropriation other than through the regular and orderly presentation of budget requests in the manner provided in this chapter or to the governor in emergencies.
You specifically ask whether State Public Defender Richard Phelps violated section 16.49 during the deliberations on the last budget bill. Part of the Governor's proposed budget provided that private attorneys who were hired by the public defender program for misdemeanor cases would receive a flat-fee reimbursement of $200 per case when the case settled before trial. The public defender board and the public defender opposed this concept, believing that pay for each hour of work performed was preferable. The Legislature ultimately removed the Governor's proposal. That change, according to the Legislative Fiscal Bureau, resulted in an appropriation increase in the public defender's budget.
You have provided me with copies of correspondence between Mr. Phelps and various persons interested in the flat-fee issue. All of these people share the public defender board's opposition to the flat-fee reimbursement proposal. It is fair to say that the correspondence shows that Mr. Phelps certainly did not discourage, and in most instances encouraged, these people to inform legislators, the Governor and cabinet officials of their opposition to flat-fee *Page 60 
reimbursement. In one letter to the private bar, Mr. Phelps expressed his opposition to flat-rate reimbursement plans and said that such approaches could lead to a substantial decrease in the number of practitioners participating in the program. In another letter, the chairman of an ad hoc committee of the Wisconsin Association of Criminal Defense Lawyers (WACDL) wrote to the members of that organization asking them to write to the members of the Joint Committee on Finance to express opposition to the flat-fee reimbursement system. Mr. Phelps is the director at large of the WACDL. Without discussing all of the material which you provided, I believe it is accurate to summarize it as correspondence from Mr. Phelps to various individuals enlisting and encouraging their assistance in defeating the flat-fee reimbursement system.
In my opinion, section 16.49 does not preclude a state officer or employe from informing individuals or groups that they may be affected by certain budget actions and telling or reminding them to whom they should write if they wish to express an opinion. I believe the first sentence of section 16.49 prohibits only requests made to legislators by a state officer or employe; it requires those requests to be made at hearings. The second sentence is a broader prohibition but still is directed only at contacts between state officers or employes and the Legislature. The first sentence prohibits presenting or arguing for an increased appropriation except at public hearings of the bodies involved. The second sentence prohibits attempting to get a budget increase other than through the procedures outlined in chapter 16.
Section 16.49 had its genesis in 1929 Senate Bill 1. That bill created the state budget department, the office of director of budget and provided for the state budget system which the state essentially still follows. The bill was an attempt to consolidate and systematize the state budget process. Apparently the Legislature felt it necessary to prohibit state agencies and employes from attempting to subvert that system. Nothing in the act's history or the law's language indicates that it was meant to prohibit or even to discourage state officials from informing citizens of the status of budget deliberations or suggesting to those citizens that they inform their elected officials of their opinions.
Expressions of opinions from citizens on any legislative matter, and certainly the budget, should be encouraged and welcomed. It hardly would be surprising to find that citizens write about issues *Page 61 
which concern them. Similarly, it is not surprising that agencies inform individuals and groups which share their positions on the issues of the need for their assistance on those issues. For example, the Department of Development may contact chambers of commerce, business associations and tourist industry groups for their assistance in obtaining an increase in the department's budget to promote tourism or provide other aid to businesses. Other departments or officials may also do so on appropriation matters within their agency budgets. If section 16.49 is read expansively, all of these activities would be prohibited.
Lobbying by state agency officials is regulated in chapter 13. Section 16.49 is designed to force agency officials to use the budget process set by the Legislature. It is not an attempt to stop agencies or state officials from expressing their concerns on budgetary matters to the public. The communications which I have reviewed for this opinion all fall within the latter category. I do not consider any of them to be a violation of section 16 49.
Speech on public issues occupies the "highest rung of the hierarchy of first amendment values." NAACP v. Claiborn HardwareCo., 458 U.S. 886 (1980). The first amendment protects a public employe's comments on matters of public concern. Connick v.Myers, 461 U.S. 138 (1983). That amendment requires the state to balance the interests of the employe, as a citizen, in commenting upon matters of public concern and the interest of the state, as an employer, in promoting the efficiency of the public services it performs through its employes. Pickering v. Board ofEducation, 391 U.S. 563, 568 (1968). Section 16.49, as interpreted, is not an unconstitutional restraint on first amendment rights but a reasonable regulation of employment.Minnesota State Bd. For Com. Colleges v. Knight, 465 U.S. 271,288 (1984).
You also ask who is charged with enforcing section 16.49 and what the penalties for violating that statute are. 1929 Senate Bill I provided that violations of that section were just and adequate cause for removal from office or dismissal from employment. That language was not included in the actual law, but I would conclude that an employe violating section 16.49 could be subject to personnel action under section 230.34, which provides that an employe may be removed, suspended without pay. discharged, reduced in base pay or demoted for just cause. Certainly, violation of a state statute regulating the conduct of a state employe could be just *Page 62 
cause. Those state officers who serve at the pleasure of a board, such as Mr. Phelps, would be subject to removal under section17.07 (6). An appointed state officer would also be subject to interpellation under section 13.28 and removal under section13.30.
Section 946.12 prohibits any public officer or employe from doing any act "which he knows is in excess of his lawful authority or which he knows he is forbidden by law to do in his official capacity." Since a violation of section 946.12 is a felony, it is also possible that an officer or employe violating section 16.49 could be charged with a violation of section946.12.
DJH:AL *Page 63